IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

DARIN LEE HAUMAN,
   Plaintiff,
  v.
JEFFREY BEARD, et al.,
   Defendants

Case No. 3:05-cv-439-KRG-KAP

Report and Recommendation

Recommendation

The defendants move for summary judgment, docket no. 52, as does plaintiff, docket no. 33 and docket no. 42. The plaintiff's motions should be denied and defendants' motion for summary judgment should be granted, with the exception that plaintiff's claim for injunctive relief based on allegations that he was exposed to friable asbestos in May 2005 and April 2006 should be allowed to go forward for a nonjury trial.

Report

Plaintiff, incarcerated at S.C.I. Laurel Highlands, filed a complaint, docket no. 1, and an amended complaint, docket no. 6, alleging that defendants, who are employees of the Pennsylvania Department of Corrections, violated his rights under the Eighth Amendment, under Title II of the Americans with Disabilities Act, 42 U.S.C.§ 12101, et seq., and under the Rehabilitation Act, 29 U.S.C.§ 701, et seq.[1] Although plaintiff also complains that his

---

1. Only the Eighth Amendment claim under 42 U.S.C.§ 1983 is colorable. Plaintiff assumes that because the ADA and RA deal with the rights of persons with disabilities his allegations that he is disabled make those statutes relevant sources of legal duties for the defendants. That is incorrect.

mail has been improperly opened by Pennsylvania Department of Corrections personnel, the heart of his complaint is that his pulmonary ailments have been caused or aggravated by his exposure to a variety of environmental pollutants, including emissions from the coal fired power plant, dust and asbestos from pipe insulation in buildings and from the mechanical buffing of floor tiles, and second-hand tobacco smoke. The defendants move for summary judgment on the merits of both claims.

Federal Rule of Civil Procedure 56(c) requires the entry of summary judgment when there is no genuine issue of material fact. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-248 (1986). (emphasis in original). A fact is "material" if proof of its existence or non-existence would affect the outcome of the lawsuit under the substantive law applicable to the case. 477 U.S. at 248. An issue of material fact is "genuine" if the evidence is such that a reasonable factfinder could find in favor of the non-moving party. 477 U.S. at 257.

### Applicable substantive law

Prison inmates have a constitutional right that prison officials not be deliberately indifferent to their safety or to any other basic human need. See Wilson v. Seiter, 501 U.S. 294, 304 (1991). See also Hudson v. McMillian, 503 U.S. 1 (1992)(constitutional violation can exist even in absence of serious injury); Estelle v. Gamble, 429 U.S. 97, 105 n.10 (1976)

(medical care). In considering motions for summary judgment on claims that prison officials are liable for physical injuries to an inmate, a plaintiff must show evidence that there was a substantial risk of serious harm, that the defendant whose actions are under consideration showed deliberate indifference thereto, and, of course, causation. See Hamilton v. Leavy, 117 F.3d 742, 746 (3d Cir.1997)(reversing grant of summary judgment for defendants in case of prisoner assaulted by fellow prisoner).

The exposure to environmental tobacco smoke claims in plaintiff's complaint are based on Helling v. McKinney, 509 U.S. 25 (1993), which held in part that the objective component of an alleged Eighth Amendment violation is satisfied by an allegation that significant exposure to second hand tobacco smoke - specifically that the plaintiff's cellmate smoked five packs of cigarettes a day - caused an unreasonable risk of harm to inmate health. See also Atkinson v. Taylor, 316 F.3d 257, 259 (3d Cir.2003)(allegation that cellmates were "constant" smokers over period of seven months adequate). Here, at the summary judgment stage, plaintiff herein does not produce evidence that he is exposed to more than occasional tobacco smoke. Plaintiff claims that he is exposed to smoke from sixty packs of cigarettes per day, docket no. 58 at 13, but his methodology speaks for itself. It is based on the proposition that sixty percent of the 100 inmates in his dormitory smoke an average of one pack of cigarettes, all in

his presence despite the prison's no smoking policy. While plaintiff's estimate cannot be ruled out as a matter of metaphysical certainty, it is not competent evidence. Plaintiff claims that the prison's no smoking policy is not adequately enforced. This does not allow the conclusion that plaintiff is exposed to more than occasional tobacco smoke, and it is not possible to say that exposure to occasional tobacco smoke can now be considered an unreasonable risk. In the absence of competent evidence that plaintiff is hypersensitive to tobacco smoke, that dooms his claim. See Griffin v. DeRosa 153 Fed.Appx. 851 (3d Cir.2003)(allegation of exposure to tobacco smoke from 8-10 inmates smoking cigarettes every time plaintiff used bathroom over period of twenty months insufficient to state Helling claim).

The second element of any Eighth Amendment claim is a culpable state of mind on the part of defendants. The Supreme Court has defined deliberate indifference for purposes of Eighth Amendment claims:

> [A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

Farmer v. Brennan, 511 U.S. 825, 837 (1994). Since a defendant's state of mind, like other facts, can be proved by circumstantial evidence, the Farmer standard does not require a defendant to admit

his consciousness of the risk of serious harm before liability can be imposed. However, even gross errors of judgment are not constitutional violations: liability requires subjective, not objective culpability. 511 U.S. at 843 n.8. Plaintiff offers no competent evidence that the level of tobacco smoke in his environment (by which he means the entire prison facility, <u>see</u> docket no. 58 at 13) has caused him any harm or risk of harm. This results in two possibilities, and defendants cannot be liable in either case: 1) if plaintiff is not suffering any harm (or risk of harm) it is impossible for defendants to be deliberately indifferent to it; or 2) if plaintiff is suffering harm or risk of harm as a result of environmental tobacco smoke but there is no evidence of that harm (or risk of harm), defendants are not as a matter of law deliberately indifferent because that standard requires subjective awareness of the danger. As the Supreme Court stated in <u>Farmer</u>, 511 U.S. at 844:

[I]t remains open to the officials[2] to prove that they were unaware even of an obvious risk to inmate health or safety. That a trier of fact may infer knowledge from the obvious, in other words, does not mean that it must do so. Prison officials charged with deliberate indifference might show, for example, that they did not know of the underlying facts indicating a sufficiently substantial danger and that they were therefore unaware of a danger, <u>or that they knew the underlying facts but believed (albeit unsoundly) that the risk to which the facts gave rise was insubstantial or nonexistent</u>. (my footnote and emphasis)

<u>Plaintiff's motion for summary judgment</u>

Plaintiff's evidence in support of his motion for summary judgment can be summed up as: (1) evidence that he suffers from some pulmonary ailments; and (2) evidence that there are pollutants in the air at S.C.I. Laurel Highlands. For purposes of plaintiff's motion, it is sufficient to observe that plaintiff has failed to submit any competent evidence of causation, that is, that the pulmonary conditions he alleges he has were caused or are aggravated by the environmental conditions he alleges. Plaintiff

---

2. Importantly, defendants cannot be lumped together as if their potential liability is determined by asking only whether plaintiff had suffered some harm: a district court must engage in an individualized determination of each defendant's qualified immunity. See <u>Rouse v. Plantier</u>, 182 F.3d 192, 200 (3d Cir.1999). Plaintiff makes no effort to show how each defendant is aware of the level of environmental toxins, has drawn the conclusion that those levels are dangerous and harming plaintiff, and has disregarded that conclusion. Plaintiff claims that the defendants are all aware S.C.I. Laurel Highlands is a prison medical facility housing prisoners with respiratory ailments and therefore all defendants can be charged with knowledge that he is at risk of respiratory ailments from any exposure to pollutants. docket no. 35 at 10. Similarly, plaintiff urges that because the smokestack at the prison heating plant is visible for miles around all defendants can be charged with knowledge of its emissions and their dangers to him. docket no. 35 at 11. That is not the case.

cannot prove any claim without expert evidence because unless a medical "matter ... is so simple, and the lack of skill or want of care so obvious as to be within the range of ordinary experience and comprehension of even nonprofessional persons," expert testimony is necessary to establish both the standard of care and the causation of injury. See Brannan v. Lankanau Hospital, 490 Pa. 588, 417 A. 2d 196, 201 (1980), quoting Chandler v. Cook, 438 Pa. 447, 451, 265 A.2d 794 (1970); Geibel v. United States, 667 F. Supp. 215, 219 (W.D.Pa.1987), aff'd, 845 F.2d 1011 (3d Cir.1988). The decision in Bushman v. Halm, 798 F.2d 651, 658-59 (3d Cir.1986) is instructive on the point. The Court of Appeals, applying New Jersey law in an FTCA claim, held that expert testimony was not necessary to prove that the government's action caused plaintiff's alleged injuries because in that case the causal mechanism was obvious: plaintiff was driving his truck, his truck was struck head on by a Postal Service jeep, and plaintiff claimed that his knees began to hurt immediately after the collision. Estelle v. Gamble gives similarly obvious examples in claims under the Eighth Amendment case where no expert testimony is needed to show a culpable state of mind. It does not require an expert to explain that decisions to throw away the prisoner's ear and stitch the stump rather than treat the prisoner after an altercation or to inject a prisoner with penicillin when it is known that he is allergic are the product of deliberate indifference. 429 U.S. at

104 n.10. But assuming that defendants are aware of the injuries plaintiff claims, the causal mechanism for the pulmonary ailments plaintiff alleges have resulted from exposure to a variety of pollutants at different times is not obvious at all[3]. This is so especially in light of what is necessarily implied in the complaint: that without the same ill effects hundreds or thousands of other inmates and most of the defendants have been exposed (or in defendants' case, exposed themselves[4]) to the same pollutants.

---

3. To anticipate a possible objection, I note that the court has no power to appoint an expert to aid the plaintiff in supplying this missing evidence. Boring v. Kozakiewicz, 833 F.2d 468, 474 (3d Cir.1987), cert. denied, 485 U.S. 991 (1988). A court has the discretionary power to request counsel to represent a plaintiff, but even in the Third Circuit's most expansive discussion of the point that the need for expert testimony urges in favor of appointing counsel, see Parham v. Johnson, 126 F.3d 454, 460 (3d Cir.1997), there is no suggestion that the court can appoint expert witnesses for a party.. Federal Rule of Evidence 706 refers to the power of the court to appoint its own impartial expert, see F.R.E. 706(d), but does not grant any authority to appoint an expert for one of the parties. Nor does any other source of law.

4. Plaintiff does not suggest why defendants would be indifferent to exposing themselves to the same pollutants on a daily basis. Furthermore, I routinely receive complaints from inmates alleging that some of these same Pennsylvania Department of Corrections defendants are refusing to give the inmates all the medical care they need because the defendants want to reduce the cost of inmate health care. Why those same defendants allegedly are exposing themselves and hundreds of inmates to conditions that allegedly will lead to the incurring of enormous costs (because plaintiff does not allege that he is being denied health care) is unexplained. The absence of any plausible motive for defendants to engage in the conduct alleged is relevant to whether a genuine issue of fact exists within the meaning of Rule 56(e). Matsushita Elec. Ind. Co. v. Zenith Radio, 475 U.S. 574, 596-97 (1986).

Why and how plaintiff is so uniquely injured is not something plaintiff can present to a finder of fact on his own say so. The Seventh Circuit helpfully illustrates the need for expert evidence on this point in an inmate environmental tobacco smoke claim in Henderson v. Sheahan, 196 F.3d 839 (7th Cir.1999), cert. denied, 530 U.S. 1244 (2000). Affirming summary judgment to defendants on plaintiff's claims that excessive exposure to tobacco smoke caused him present harm and also put him at risk of future harm, the panel observed that although plaintiff's expert had testified generally that exposure to excessive levels of tobacco smoke leads to (that is, is statistically correlated with) a twenty percent greater risk of atherosclerosis, the expert conceded that it would be virtually impossible to determine that exposure to smoke was the cause of plaintiff or any particular individual's ailments. 196 F.3d at 852-53. That is fatal to any liability claim. With less analysis, in Oliver v. Deen, 77 F.3d 156, 160 (7th Cir.1996), the same court affirmed the grant of summary judgment to defendants on an inmate's claim that a history of celling him with smokers had caused him asthmatic distress, observing that the inmate's evidence of causation (including affidavits of inmates that they had observed Oliver having asthma attacks) was insufficient:

> Other than a few general news articles, which indicate that smoke, as well as many other things, may aggravate an asthmatic condition, there is no evidence in the record that there is a causal relationship between the smoke and the distress Mr. Oliver suffered.

9

Plaintiff's evidence here, about the same in quality as that in Oliver, see docket no. 60-2, and far less than in Henderson, is insufficient to withstand summary judgment, much less command it in his favor.

Defendants' motion for summary judgment

Defendants seek summary judgment on the grounds that there is a lack of serious injury to plaintiff and a lack of evidence of deliberate indifference. There is no competent evidence of injury to plaintiff. Plaintiff confuses Estelle's concept of "serious medical need" with the element of injury. Plaintiff argues that because prior to coming to S.C.I. Laurel Highlands he did not have the respiratory problem he now has "it must be presumed to have" been caused by the environmental conditions he has been exposed to. docket no. 59 at 2-3. That is not a valid argument, logically or legally. The same lack of expert evidence fatal to plaintiff's motion for summary judgment is also fatal to plaintiff's proof at trial, and trial would be an exercise with a foregone conclusion.

The reason there is no evidence of injury to plaintiff is not because he lacks access to medical care[5]: as plaintiff points out, his prison is primarily a facility for inmates with

---

5. Plaintiff specifically states that he makes no claim that the medical staff at S.C.I. Laurel Highlands is inadequate. docket no. 63 at 7-9.

10

heightened medical needs. In fact, plaintiff claims the amount of medical attention he is receiving is evidence in support of the argument that defendants must be aware that environmental conditions pose an unreasonable risk to his safety. See docket no. 34 at 15; docket no. 35 at 7-8; docket no. 59 at 4. Plaintiff's medical records are a 123 page exhibit at docket no. 61-2. They show diagnosis of and medical treatment at various times for high cholesterol, low back strain, sleep apnea, hemorrhoids, pneumonia, obesity, nosebleed, headache, high blood pressure, tooth decay, blisters on the feet, and questionable acid reflux and asthma. On numerous occasions, particularly in 2005, plaintiff reports shortness of breath and dizziness, and on some of these occasions plaintiff himself attributes his symptoms to emissions from the prison's coal-fired power plant. However, on other occasions when plaintiff is to be transported out of S.C.I. Laurel Highlands for hearings in Fulton County plaintiff is noted as making no health complaints and denying health concerns. Whether the measurement of excessive risk to plaintiff's health is measured against the standard of the hypothetical average person or against the hypothetical inmate in a medically oriented prison, there is evidence that plaintiff has genuine health conditions but there is no evidence of "excessive risk" to plaintiff's health as Farmer requires.

Further, there is no notation anywhere in plaintiff's records that even shows anyone connected with the prison medical service believes that plaintiff's complaints can be attributed to environmental toxins: to the contrary, the few entries that discuss causes for plaintiff's complaints refer to a family history of coronary disease, and to plaintiff's obesity and high cholesterol. See e.g. docket no. 64-2. In the more common fact pattern where an inmate sues the nonmedical staff of a prison for the medical department's alleged deliberate indifference to a serious medical need, the Court of Appeals for the Third Circuit has stated:

> [A]bsent a reason to believe (or actual knowledge) that prison doctors or their assistants are mistreating (or not treating) a prisoner, a non-medical prison official ... will not be chargeable with the Eighth Amendment scienter requirement of deliberate indifference.

Spruill v. Gillis, 372 F.3d 218, 236 (3d Cir.2004). The obverse of same principle applies here: where the plaintiff's medical records do not show that plaintiff suffers from a condition caused by exposure to environmental toxins, the corrections defendants cannot be said to be deliberately indifferent for believing the medical records.

Plaintiff does make the additional claim that because the walkways were negligently maintained he stepped in a hole in the summer of 2006 and sprained his ankle, docket no. 58 at 12, but stepping in a hole is, if legally attributable to defendants at all, negligence and not deliberate indifference.

Plaintiff also believes that he was exposed to friable asbestos. Defendants aver that on the one occasion in April 2006 there was a release of asbestos including friable asbestos from the mechanical room in the Maintenance Annex, docket no. 55-6 at 13-22, but that plaintiff was not in the work crew assigned to the building nor present in the building. docket no. 55-8 at 5. Plaintiff admits that he was not directly exposed to asbestos in the April 2006 incident but avers that he suffered second-hand exposure from fellow inmates who were exposed and carried fibers back to the housing unit. docket no. 58 at 10.

Plaintiff asserts that he was also exposed to friable asbestos in May 2005 while on a work project at the Officers Dining Room. docket no. 58 at 6. Plaintiff disbelieves the defendants' denial that there was any friable asbestos released in the May 2005 incident, see docket no. 55-8 at 4 (Kreutzberger affidavit), because plaintiff avers no testing of these materials was done. docket no. 60 at 7-8, docket no. 58 at 6, 9-10. Defendants do not claim that any testing was done. Defendants admit that there are asbestos containing materials in that building. See docket no. 36-5 at 42 et seq.; docket no. 36-6.

Accepting the evidence in the light most favorable to plaintiff, a reasonable finder of fact would not have enough evidence to conclude whether plaintiff was or was not directly exposed to friable asbestos in May 2005, or by second-hand contact

in April 2006. Plaintiff does not have any evidence that if he was exposed he was injured, because mere exposure to asbestos is not equivalent to injury. Because it is not, plaintiff cannot recover money damages. See Zehner v. Trigg 952 F.Supp. 1318 (S.D.Ind.), aff'd 133 F.3d 459 (7th Cir.1997). In Zehner, inmates who alleged they were deliberately exposed to friable asbestos clearly were at risk of serious injury. The district court held that because there was no claim of present injury the complaint must be dismissed without prejudice to inmates asserting a damages claim if they developed an injury. 952 F.Supp. at 1327. Here, at the summary judgment stage, plaintiff has produced no evidence of current injury, and judgment should be entered for defendants on any damages claim on that ground alone.

Summary judgment should also be entered on any damages claim for exposure to asbestos (and a fortiori, to any other environmental toxins) on the basis of qualified immunity. Qualified immunity protects corrections personnel, like other government officials, unless they are "plainly incompetent or ... knowingly violate the law." Malley v. Briggs, 475 U.S. 335, 341 (1986). When a corrections officer makes a discretionary decision, for instance how to conduct a work detail, he is protected from liability for civil damages "as long as [his] actions could reasonably have been thought consistent with the rights they are alleged to have violated." Anderson v. Creighton, 483 U.S. 635,

638 (1987). For personal liability to attach, a defendant would have had to know that plaintiff had a "clearly established," see Harlow v. Fitzgerald, 457 U.S. 800, 818-19 (1982), right. Because there is no dispute that a correctional facility would not be allowed to deliberately expose an inmate to friable asbestos, the question posed by the summary judgment motion is whether defendants knew in fact that they were exposing plaintiff to friable asbestos. In Brown v. Armenti, 247 F.3d 69, 73 (3d Cir.2001), the Court of Appeals phrased the inquiry as:

> the defendant is entitled to the defense of qualified immunity if none of the following questions can be answered in the affirmative: (1) have the plaintiffs alleged a violation of their statutory or constitutional rights; (2) was the right alleged to have been violated clearly established in the existing law at the time of the violation; and (3) should a reasonable official have known that the alleged action violated the plaintiffs' rights. Rouse v. Plantier, 182 F.3d 192, 196-97 (3d Cir.1999).

The focus here is on the third element. Plaintiff does not even allege, much less provide evidence that defendants knowingly or recklessly exposed him to asbestos. See docket no. 34 at 18, ¶126 (citing to record that defendant Hillegas believed asbestos had been removed before work on the Officers Dining Room began); see also docket no. 36-1 at 38 et seq. (Interrogatories to F. Beers No. 8-10 and 19, and answers thereto, asserting asbestos had been removed by qualified contractors from A unit, B-unit and C-unit, and that high speed burnishers were not a danger of releasing asbestos fibers into the air during floor polishing); docket no. 36-2 at 3 et seq. (Interrogatories to Hillegas no. 11 and 14, and

15

answers thereto, replying "no" to questions whether anyone had prior knowledge of asbestos in work areas). Because plaintiff has produced no evidence that defendants knew of or recklessly disregarded a risk they might expose him to asbestos before they assigned him to work on the Officers Dining Room in May 2005, or after the incident in April 2006, plaintiff cannot overcome the defense of qualified immunity as to any exposure. The same goes for exposure to other toxins such as "toxic mold" and excessive dust. See docket no. 36-5 at 8 et seq.

All that is left is plaintiff's assertion that he was in fact exposed to asbestos and therefore the claim that defendants have with deliberate indifference failed to determine whether he was in fact exposed to asbestos in 2005 or 2006. If plaintiff proves that he was exposed to friable asbestos, which defendants do not deny would be a serious health risk, plaintiff may be able to prove a claim for injunctive relief, for example an order that he should be covered by defendants' monitoring program applicable to the other inmates and corrections personnel exposed to asbestos. That limited claim can go forward.

Finally, plaintiff alleges that First Amendment rights are being violated because his privileged mail is being opened without him being present. Defendants admit that on one occasion there was an inadvertent opening of plaintiff's privileged mail. docket no. 36-5 at 9; docket no. 55-3 at 3 (Gail Beers affidavit).

The Court of Appeals held in August 2006 that a blanket practice of opening inmate legal mail outside the presence of the inmate of itself "impinges upon" the First Amendment. Jones v. Brown, 461 F.3d 353, 359 (3d Cir.2006), cert. denied, 127 S.Ct. 1822 (2007). Jones v. Brown limited Oliver v. Fauver, 118 F.3d 175 (3d Cir.1997), which had previously held that there an inmate had no claim unless the opening of the mail had an adverse impact on his access to court. The specific policy at issue in Jones v. Brown was a policy adopted in New Jersey after anthrax bacilli were sent through the mail in the month following the attacks of 9/11. The policy was still being applied more than three years later despite the absence of any indication of a threat of anthrax. The panel held that, on the facts, the New Jersey policy failed to pass muster under the Turner v. Safley, 482 U.S. 78, 89 (1987) test, but also that defendants were qualifiedly immune from any damages claim because the law to that point had not been clearly settled. But at no time, even while Bieregu v. Reno, 59 F.3d 1445 (3d Cir.1995), overruled by Oliver v. Fauver, was the law of the circuit, has an inmate been able to state a claim for an isolated inadvertent opening of his mail. Plaintiff does not dispute defendants' evidence that there was only one incident contrary to Pennsylvania Department of Corrections' policy in which his mail was opened, but plaintiff asserts the further claim that defendants' requirement

17

that a control number must be used for correspondence to be considered privileged mail is improper.

In August 2007, Pennsylvania's Commonwealth Court held that Pennsylvania Department of Corrections' policy for opening legal mail does comply with the First Amendment. <u>Brown v. Pennsylvania Department of Corrections</u>, 932 A.2d 316 (Pa.Cmwlth. 2007). As defendants explain in their motion for summary judgment, docket no. 55-3 (Gail Beers affidavit) and as the court explained in <u>Brown</u>, mail purporting to be legal mail is not automatically privileged and the Pennsylvania Department of Corrections requires counsel to use a control number issued by the department to be considered privileged. Plaintiff argues that any mail purporting to be from an attorney should be considered privileged. docket no. 58 at 14-15, and cites <u>Fontroy v. Beard</u>, 485 F.Supp 592 (E.D.Pa.2007) in support. In <u>Fontroy</u>, Judge Savage found the Pennsylvania Department of Corrections policy infringed on the First Amendment rights of inmates; Judge Savage acknowledges that other judges in his district have reached the opposite conclusion. <u>Fontroy v. Beard</u>, 2007 WL 1810690 *2 n.4 (E.D.Pa. June 21, 2007), <u>citing</u> <u>Robinson v. Pennsylvania Dep't of Corrections</u>, 2007 WL 210096 (E.D.Pa. January 23, 2007) and <u>Harper v. Beard</u>, Civil Action No. 05-1803 (E.D. Pa. April 23, 2007). Because of the appeal in <u>Fontroy</u> the Court of Appeals will ultimately establish the law in this area. For purposes of this motion it is sufficient to say that

I find Judge Savage's reasoning unpersuasive, particularly his assessment that there is a lack of availability of reasonable alternatives to inmates because they have no ability to force counsel to use a control number. Fontroy v. Beard, 2007 WL 1810690 *2 n.3 Because a requirement that correspondents seeking to have their mail designated as privileged apply for and use a control number easily satisfies the Turner v. Safley test, plaintiff's First Amendment claim should be dismissed.

Because it appears that the only surviving claim is the claim for injunctive relief relating to the plaintiff's allegation that he was exposed to asbestos in 2005 and 2006, and that the appropriate defendant in ordering injunctive relief would be the warden, all other defendants should be dismissed at this stage.

Pursuant to 28 U.S.C.§ 636(b)(1), the parties are given notice that they have ten days to serve and file written objections to this Report and Recommendation.

DATE: 22 February 2008

Keith A. Pesto,
United States Magistrate Judge

Notice by ECF to counsel of record and by U.S. Mail to:

Darin Lee Hauman CJ-8797
S.C.I. Laurel Highlands
P.O. Box 631
5706 Glades Pike
Somerset, PA 15501-0631